UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRYAN CHRISTOPHER BROWN,

        Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

        Defendants.
_____/

Case No. 1:25-cv-161

Honorable Ray Kent

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 7.)

    This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

    "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion for a preliminary injunction/temporary restraining order (ECF No. 2) and motion to expedite (ECF No. 8).

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan and the Lakeland Correctional Facility (LCF) in

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Coldwater, Branch County, Michigan. Plaintiff sues the MDOC, MDOC Director Heidi E. Washington, MCF Warden James Schiebner, and LCF Warden Bryan Morrison.

Plaintiff declares he is "of Non-Denominational Faith." (Compl., ECF No. 1, PageID.5.) He does not believe in "denominations as they are man[-]made and not ordained by God." (*Id.*, PageID.12.) Instead, he claims to follow multiple religious doctrine (*id.*), owning a Bible, the Book of Morman, two Quran, and multiple Islamic books (*id.*, PageiD.17) He states that "[i]n the free world," he and his family could attend a Catholic service one week, a Protestant service another, a Muslim church on yet a third, and finish the month at a Southern Baptist service. (*Id.*, PageID.37–38.) Plaintiff further avers that religious sects, which he avoids, "are a restraint on people made by man to put restraints on people to conform in a certain way or obey certain rules made by man in the individual denomination or sect which does not allow a person to expand his beliefs and practices to see the real God." (*Id.*, PageID.58.) His non-denominational belief allows him to practice numerous teachings "without having to conform to the individual sect's rules and regulations, or requirements and limitations." (*Id.*)

Plaintiff states that "Ramad[a]n is about giving up substances during the day in . . . remembrance of our lord and his continuing efforts to reach all of man kind [sic]." (*Id.*, PageID.40.) He alleges that he has requested to participate in the Ramadan fast since 2019 but has not been permitted to do so because he is not Muslim. (*Id.*, PageID.4–8.) Plaintiff sent various requests and grievances to Defendants and others, claiming that the decisions and policy not to provide Plaintiff with meals in accordance with the Ramadan fast violated MDOC policy and Plaintiff's First and Eighth Amendment rights, but never received a satisfactory response. (*Id.*, generally.) On February 14, 2023, Plaintiff submitted a letter to Defendant Morrison asking to be put on the Ramadan list.

4

(*Id.*, PageID.8.) Plaintiff received a memorandum on February 28, 2023, in response to his requests. (*Id.*, PageID.8–9.)

During the 2022 Ramadan fast, Plaintiff chose to fast without being provided Ramadan meals and lost 16.2 pounds in 27 days. (*Id.*, PageID.7.) Plaintiff did the same in 2023 and lost 22 pounds. (*Id.*, PageID.10.)

Additionally, Plaintiff claims that his religious preference has been documented as "unknown" because the MDOC does not include a category for "Nondenominational." (*Id.*, PageID.40.) On February 24, 2020, April 11, 2022, and February 13, 2023, Plaintiff sent "request[s] for declaratory ruling" to Defendant Washington, asking her to "acknowledge Non-Denominational prisoners." (*Id.*, PageID.6, 7, 8.) Plaintiff does not indicate whether he was provided with responses, but states that he filed a grievance against Defendant Washington "for refusing to list Non-Denominational as a religious preference." (*Id.*, PageID.7.)

On January 19, 2023, Plaintiff filed a request to be put on the Ramadan list. (*Id.*) An MDOC non-party chaplain listed Plaintiff's religion as "Protestant," and explained that Plaintiff could switch his religious preference to Muslim if he would like to be placed on the Ramadan list. (*Id.*, PageID.7–8.) Plaintiff states that the listing of Plaintiff's preference as Protestant implies that Plaintiff identifies with a specific denomination, which is against Plaintiff's religious beliefs. (*Id.*, PageID.43.) On February 2, 2024, Plaintiff again "tried to change his religious preference to non-denominational." (*Id.*, PageID.9.)

Plaintiff seeks declaratory and monetary relief. (*Id.*, PageID.29–30.) He also requests that the Court issue a preliminary injunction and temporary restraining order "to allow [Plaintiff] to participate in the 2025 Ramadan fast between the dates of March 1st to March 28th, 2025." (*Id.*, PageID.10.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Free Exercise and RLUIPA Claims

Plaintiff alleges that Defendants violated Plaintiff's First Amendment right to free exercise and rights under RLUIPA. The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To claim that this right has been violated, Plaintiff must plead facts that would plausibly suggest (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same).

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7). Because RLUIPA dictates "that the substantial-burden

7

inquiry is practice specific[,]" the Court must "first identify the 'religious exercise' at issue." *Ackerman v. Washington*, 16 F.4th 170, 184–85 (6th Cir. 2021) (citing 42 U.S.C. § 2000cc-1; 42 U.S.C. § 2000cc-5; and *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015)).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733–34 (6th Cir. 2007). RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water*, 258 F. App'x at 734. "[A] 'substantial burden' is a difficult threshold to cross." *Id*. at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id*. at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2014)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id*. a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water*, 258 F. App'x at 733–34 (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise);

*Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (discussing that a substantial burden is one which renders religious exercise "effectively impracticable" (quoting *Civil Liberties for Urban Believers*, 342 F.3d at 761).

### 1.    Non-Denominational as a Religious Preference

Plaintiff brings a claim under RLUIPA against Defendant Washington in her official capacity, alleging that Defendant Washington violated Plaintiff's rights by refusing to list Non-Denominational under the MDOC's list of religious preferences. (ECF No. 1, PageID.11–12.) Plaintiff states: "The Director refusing to update the (OTIS) system to recognize prisoners of this practice puts a substantial burden on Mr. Brown's religious exercise" (*id.*, PageID.12), and alleges in a conclusory fashion that that the failure to list Non-Denominational as a preference "puts a substantial burden on the adherence to their religious beliefs and the opportunity to participate in religious services, fasting, etc." (*id.*, PageID.13).

However, Plaintiff fails to provide the Court with any facts that would plausibly suggest that the failure to list Non-Denominational as a religious preference on the OTIS system *alone* substantially burdens Plaintiff's religious exercise. This is particularly true where MDOC Policy provides a process by which Plaintiff could request recognition of his Non-Denominational religious preference.

According to MDOC Policy Directive 05.03.150, ¶ L, governing Religious Beliefs and Practices of Prisoners, "[a] prisoner or group of prisoners belonging to a religious group not already recognized by the Department may request Department recognition of that group by submitting a Religious Recognition Form (CSJ-999) to the facility Chaplain."[2] Plaintiff's complaint does not

---

[2] The present policy became effective just a few days ago. Prior policies have been similar. Under the present policy, the request for recognition must include "information regarding the group's religious beliefs and practices." MDOC Policy Directive 05.03.150, ¶ L. The chaplain's only responsibility is to compile the required information and pass it on to the Central Facilities

suggest that Plaintiff followed Policy Directive 05.03.150, ¶ L, by submitting a proper Religious Recognition Form to the chaplain of each facility and that his request was denied. Therefore, Plaintiff cannot begin to claim that his religious exercise has been substantially burdened.

As explained above, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *Konikov*, 410 F.3d at 1323, or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God*, 258 F. App'x at 734. If that were enough, it would render meaningless the word "substantial." *Civil Liberties for Urban Believers*, 342 F.3d at 761.

Requiring that Plaintiff submit a form is not a substantial burden. On this issue, *Koger v. Mohr* is instructive. 964 F.3d 532, 539 (6th Cir. 2020). There, the plaintiff claimed that the prison's grooming policy violated his Rastafarian belief that he must grow his hair in dreadlocks. *Id.* The grooming policy permitted inmates to wear dreadlocks less than half an inch in thickness, but inmates whose locks exceeded half an inch could request an exemption and an individualized determination that their hair was searchable. *Id.* at 539-40, 543. Because the plaintiff did not request an exemption, he failed to show that the policy substantially burdened his religious practice. *Id.*

Here too, Plaintiff fails to plead facts that would indicate that Plaintiff made a request for recognition of his Non-Denominational religious preference in accordance with MDOC Policy Directive 05.03.150, ¶ L. Certainly, making such a request would not pressure Plaintiff to violate his religious beliefs. Therefore, the Court cannot find that the failure of the MDOC to preemptively

---

Administration Special Activities Coordinator (CFA SAC). *Id*. The CFA SAC conducts all necessary inquiries and resolves the request. *Id*. The MDOC Executive Director plays no role in granting recognition under the policy.

list Non-Denominational on the OTIS system has placed a substantial burden on Plaintiff's religious exercise. Any such claims will be dismissed.

### 2. Evening Ramadan Meal

Plaintiff also brings First Amendment and RLUIPA claims against Defendants, alleging that Defendants have refused to "allow the Plaintiff to participate in [Ramadan] and feed[] the Plaintiff in accordance with his religious beliefs." (ECF No. 1, PageID.14.) Plaintiff alleges that Defendant Washington did not allow Plaintiff "to fast during [Ramadan]" and did not provide Plaintiff with Ramadan meals.³ (*Id.*, PageID.15.) Plaintiff also claims that Defendants Schiebner and Morrison refused to allow Plaintiff to participate in the Ramadan fast. (*Id.*, PageID.21.)

To be clear, Plaintiff's well-pleaded factual allegations do not suggest that Defendants prohibited Plaintiff from fasting generally. Indeed, Plaintiff details two occasions, in 2022 and 2023, where Plaintiff fasted and lost weight as a result. (*Id.*, PageID.7, 10.) Instead, Plaintiff's complaint indicates that Defendants refused to provide Plaintiff with the evening meal during the month of Ramadan. Therefore, the Court will address the evening Ramadan meal following the daily fast as Plaintiff's requested religious accommodation.

#### a. Sincere Religious Belief

The first requirement of any free exercise or RLUIPA claim is that the plaintiff identify a sincerely held religious belief relative to the religious accommodation requested. *Kent*, 821 F.2d at 1224–25). In the absence of such an inquiry into the sincerity of the religious beliefs, prisoners would be free to assert false religious claims that are actually attempts to gain special privileges or

---

³ The MDOC does not provide the MDOC Executive Director or facility wardens any role in approving religious diets under the recent iterations of the "Religious Beliefs and Prectices" policy. Only the CFA SAC may approve requests to eat from a religious menu. MDOC Policy Directive 05.03.150, ¶ UU.

to disrupt prison life. *Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996). Here, Plaintiff fails to meet this minimal initial pleading burden.

Plaintiff states that, as a Non-Denominational individual, Plaintiff "believe[s] in Christ our savior and all the prophets." (ECF No. 1, PageID.34.) He also explains in a conclusory fashion that "[a]nyone with the desire to fast during the Ramad[a]n holy month may do so if he truly wants to give up substances during the days in remembrance of our Lord." (*Id.*, PageID.35.) However, it is Plaintiff's obligation to plead facts that would plausibly suggest that the religious exercise at issue—here, the participation in the Ramadan fast and, specifically, its requirement that a participant forego meals only during the daylight hours—is based on Plaintiff's own sincerely held religious belief. *See Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015).

The facts set forth in Plaintiff's complaint do not permit the plausible inference that the accommodation that Plaintiff requested—an evening Ramadan meal—was based on Plaintiff's own sincerely held religious belief. Indeed, Plaintiff, does not make any specific allegation as to his own religious beliefs or his belief system as it relates to the requirement of an evening Ramadan meal. He instead devotes his energy to telling the Court what he *does not* believe in: primarily, denominations and religious sects, with their individual rules and regulations. He then asks the Court to infer that he has a sincerely held religious belief based upon his statements about the purpose of Ramadan and fasting generally.

Plaintiff vaguely alleges that, as Non-Denominational, he *may* believe in anything from any religion. The one thing he will not do is permit himself to be pinned down by orthodoxy or convention, because then he would stray into the territory of denominations and sects. But by avoiding being cabined by any particular doctrine, Plaintiff ultimately fails to identify any sincerely held religious beliefs or how the participation in Ramadan specifically, and the Ramadan

evening meal, is important to Plaintiff's own religious exercise. The only thing that defines Plaintiff religious practice is his own unbounded desire to not conform to any one religion. Whatever Plaintiff requests from the panoply of practices afforded across all religions defines his sincere belief. Put differently, Plaintiff's religious practice is whatever he asks for.

But "simply requesting a religious accommodation is not enough." *Bennett v. Burt*, No. 1:16-cv-1203, 2016 WL 7034240, at *6 (W.D. Mich. Dec. 2, 2016). *See also Adams v. Burnett*, 2007 WL 329992 at *5 (W.D. Mich. Jan. 31, 2007) ("Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners['] needs."). In essence, Plaintiff describes to the Court that the possibilities are endless; he could believe in anything or nothing at all. This broad-brush approach asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support a claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79. Accordingly, the Court will dismiss Plaintiff's First Amendment free exercise and RLUIPA claims because Plaintiff has not identified any sincerely held religious belief relevant to the need for a Ramadan evening meal.

### b. Substantial Burden

Hand in hand with Plaintiff's failure to identify any sincerely held religious belief is his failure to plead facts that would suggest a substantial burden on his religious exercise. Taking Plaintiff's own allegations as true, the Court cannot infer that denying Plaintiff a Ramadan meal and, therefore, the ability to participate in the Ramadan fast, places a "substantial burden" on Plaintiff's Non-Denominational religious exercise.

In his complaint, Plaintiff makes clear that his Non-Denominational religious practice eschews the "rules and regulations, or requirements and limitations" of religious denominations.

(ECF No. 1, PageID.58.) He may attend any religious service and follow any number of religious doctrines or teachings at any time without consequence to his Non-Denominational religious beliefs and practices. (*Id.*, PageID.17, 37–38, 56.) Indeed, the premise of Plaintiff's Non-Denominational beliefs, Plaintiff explains, is that the practices devised by the religious sects are "restraint[s] on people made by man . . . to conform in a certain way or obey certain rules . . ." and "do not allow a person to expand his beliefs and practices to see the real God." (*Id.*, PageID.58.)

Plaintiff does not claim that Defendants have prohibited Plaintiff from fasting. He claims that they have specifically refused to provide him with a Ramadan meal so that Plaintiff may fast in accordance with the specific rules of Ramadan that prevent Muslims from eating meals during the daylight hours. A burden is considered substantial under the law where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water*, 258 F. App'x at 733–34 (citations omitted). Nowhere in the complaint does Plaintiff identify a sincerely held tenet of his religion or explain how it would be substantially burdened by Defendants denial of evening Ramadan meals. Indeed, where Plaintiff explicitly pleads that the strict rules and regulations of religious sects such as Islam are antithetical to Plaintiff's own religious practice, it is impossible for the Court to infer that Plaintiff's inability to follow the particular rules of Ramadan creates a substantial burden on that practice. Therefore, for this reason as well, Plaintiff's First Amendment and RLUIPA claims are subject to dismissal.

**B.     Eighth Amendment Claims**

Plaintiff alleges that all three Defendants "fail[ed] to provide [Plaintiff] the basic human needs" when they did not provide Plaintiff with a Ramadan meal to eat at the conclusion of his daily fast. (ECF No. 1, PageID.23–27.)

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff does not allege that Defendants failed to provide Plaintiff with nutritious meals, only meals at the time of his choosing. A prisoner's choices with respect to food, even religious choices, do not implicate the Eighth Amendment. As this Court explained in rejecting a similar claim:

> [P]laintiff's complaint does not allege that he was denied food, or that even that he was denied wholesome or nutritionally adequate food. Instead, plaintiff alleges that he ate only fruits and vegetables solely because of his religious preference for a kosher diet. Although such an allegation might state a claim for violation of the First Amendment's free exercise clause, an allegation that a prisoner has elected not to consume the "whole meals" provided by the prison – and solely because of his religious preference – does not state a claim for violation of the Eighth Amendment.

*Mobley v. Smith*, 2007 WL 1650934, at *6 (W.D. Mich. June 4, 2007). *See also Turner v. Welkal*, 2014 WL 347815, at *9, (M.D. Tenn. Jan. 31, 2014) ("The court concludes that the plaintiff's factual allegations concerning missed meals and being served food that did not comport with his religious convictions, construed as true, fail to establish a violation of the plaintiff's Eighth Amendment rights"); *Burks v. Campbell*, 2018 WL 6504173, at *2 (E.D. Mich. Dec. 11, 2018)

("A denial of a religious diet cannot be grounds for an Eighth Amendment claim"). Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims for failure to state a claim.

    **C.**    **Fourteenth Amendment Equal Protection Claims**

Plaintiff alleges that the policy of providing only Muslims with food for the Ramadan fast discriminates against Plaintiff and other Non-Denominational prisoners. (ECF No. 1, PageID.16.) The Court will liberally construe this allegation to raise a claim for violation of Plaintiff's right to equal protection.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Here, Plaintiff fails to allege any facts suggesting that others who were similarly situated in all material respects were treated differently. This failure is fatal to Plaintiff's claim. Accordingly, the Court will dismiss Plaintiff's equal protection claim.

    **D.**    **Fourteenth Amendment Due Process Claims**

Plaintiff alleges that Defendants Schiebner and Morrison violated Plaintiff's right to due process when they denied Plaintiff's request for a Ramadan meal. (ECF No. 1, PageID.21.) "To

establish a procedural due process claim, a plaintiff must demonstrate: (1) a liberty or property interest protected by the due process clause; (2) a deprivation of that protected interest within the meaning of the due process clause; and (3) the defendants' failure to afford adequate procedural rights prior to the deprivation." *Russell v. Wilkinson*, 79 F. App'x 175, 178 (6th Cir. 2003) (citing *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir. 1999)). "To claim a constitutionally protected property right, one must have a 'legitimate claim of entitlement.'" *Id.* (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972)). Moreover, an inmate must show that the actions of prison officials either had the effect of altering the length or term of imprisonment or amounted to "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Plaintiff cannot make either showing.

Here, as discussed above, Plaintiff has not shown any legitimate claim of entitlement to participation in the evening Ramadan meal. Additionally, as the Sixth Circuit explained in *Russell v. Wilkinson*, 79 F. App'x 175 (6th Cir. 2003), the inability to participate in a religious meal program is not an atypical or significant hardship in relation to the ordinary incidents of prison life. *Id.* at 178 (citing *Sandin*, 515 U.S. at 484). Accordingly, Plaintiff fails to state a plausible procedural due process claim upon which relief can be granted and that claim will be dismissed.

### III.    Pending Motions

With his complaint, Plaintiff filed a motion for a preliminary injunction/temporary restraining order (ECF No. 2) and a letter seeking to expedite consideration of Plaintiff's motion for a preliminary injunction/temporary restraining order (ECF No. 8), which the Court will construe as a motion to expedite the proceedings. Because Plaintiff's complaint will be dismissed in its entirety for failure to state a claim, both motions will be denied.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's motion for a preliminary injunction/temporary restraining order (ECF No. 2) and motion to expedite consideration of Plaintiff's motion for a preliminary injunction/temporary restraining order (ECF No. 8).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reason the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   April 15, 2025                         /s/ Ray Kent
                                                Ray Kent
                                                United States Magistrate Judge